UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE

ANTON GRIFFIN, GUADALUPE      )
MARCHAN and ROSENDO QUINONES,  )
on behalf of themselves and all others  )
similarly situated            )
                              )        CASE NO.   3:08cv-482-H
PLAINTIFFS,                   )
                              )
v.                            )
                              )
COUNTRYWIDE BANK, A           )
DIVISION OF TREASURY BANK, N.A.  )
                              )
SERVE: c/o Kentucky Secretary of State  )
        700 Capital Avenue, Suite 86   )
        Frankfort, KY  40601   )
                              )
        Countrywide Bank, a    )
        Division of Treasury Bank, N.A.  )
        1199 North Fairfax Street  )
        Suite 500              )
        Alexandria, VA 22314   )
                              )
and                           )
                              )
COUNTRYWIDE HOME LOANS, INC.  )
                              )
SERVE: CT Corporation System   )
        Kentucky Home Life Building  )
        Louisville, KY 40202   )
                              )
                              )
and                           )

|                                         |     |
|-----------------------------------------|-----|
| COUNTRYWIDE MORTGAGE                     | )   |
| VENTURES, LLC                           | )   |
|                                         | )   |
| SERVE: CT Corporation System            | )   |
|     Kentucky Home Life Building | )   |
|     Louisville, KY 40202 | )   |
|                                         | )   |
|                                         | )   |
| DEFENDANTS.                             | )   |

## CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Plaintiffs, Anton Griffin, Guadalupe Marchan and Rosendo Quinones ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their undersigned attorneys, allege as follows:

## NATURE OF THE CASE

1.    This is a class action brought by Plaintiffs, on behalf of themselves and other similarly situated Black and/or Hispanic homeowners, against Countrywide Bank, a division of Treasury Bank, N.A., Countrywide Mortgage Ventures, LLC., and Countrywide Home Loans, Inc. (collectively "Countrywide" or "Defendants"), under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"), the Fair Housing Act, 42 U.S.C. § 3601 et seq. and 42 U.S.C. §§ 1981, 1982 and 1985.  Plaintiffs seek remedies for themselves and the Class (defined in ¶ 15, below) for the discriminatory effects of the Defendants' home financing policies and practices.

2.    As described below, the Defendants have established a specific, identifiable and uniform credit pricing system, a component of which, referred to herein as the Discretionary Pricing Policy, authorizes unchecked, subjective surcharge of additional points and fees to an

2

otherwise objective risk-based financing rate.  In other words, after a finance rate acceptable to the Defendants is determined by objective criteria (e.g., the individual's credit history, credit score, debt-to-income ratio and loan-to-value ratios), the Defendants' credit pricing policy authorizes additional discretionary financing charges and interest mark-ups.  These subjective, additional finance charges have a widespread discriminatory impact on Black and/or Hispanic applicants for home mortgage loans, in violation of ECOA, the FHA and deprive Plaintiffs and the Class of their civil rights in violation of 42 U.S.C. §§ 1981, 1982 and 1985..

3.      The Defendants have established policies for retail and wholesale access to their loan products that subject Black and/or Hispanic financing applicants to a significantly higher likelihood of exposure to discretionary points, fees and interest mark-ups.  These costs drive up the average cost of a mortgage loan made by one of the defendants to Black and/or Hispanic applicants.

4.      Plaintiffs seek declaratory and injunctive relief, disgorgement and restitution of monies disparately obtained from Black and/or Hispanic borrowers.


**JURISDICTION AND VENUE**

5.      Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under federal law.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) in as much as the Defendants regularly conduct business in this District.

## PARTIES

7.      Plaintiff, Anton Griffin, is a Black homeowner who resides at 3503 Indian Head Lane, Joliet, Illinois 60435.

8.      Plaintiff, Guadalupe Marchan, is a Hispanic homeowner who resides at 1344 S. 14th Street, Saint Charles, Illinois 60174.

9.      Plaintiff, Rosendo Quinones, is a Hispanic homeowner who resides at 571 Wingpointe Drive, Aurora, Illinois 60506.

10.     Defendant, Countrywide Bank, a Division of Treasury Bank, N.A. ("Countrywide Bank") is a mortgage lender with a place of business at 1199 North Fairfax Street, Suite 500, Alexandria, VA, 22314, regularly conducting business in the Commonwealth of Kentucky.

11.     Defendant, Countrywide Mortgage Ventures, LLC, ("CMV") is a mortgage lender with a principal place of business at 27001 Agoura Rd., Suite 200, Calabasas, CA 91301, authorized to do business in the Commonwealth of Kentucky.

12.     Defendant, Countrywide Home Loans, Inc. ("Countrywide Home Loans") is a mortgage lender with a principal place of business at 4500 Park Granada Blvd., Calabasas, CA 91302, authorized to do business in the Commonwealth of Kentucky.

13.     Unless otherwise stated, the Plaintiffs will refer to Countrywide Bank, Countrywide Mortgage Ventures, LLC, and Countrywide Home Loans as "Countrywide" or "Defendants."

4

## CLASS ALLEGATIONS

14.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

15.     This class action is brought pursuant to ECOA and the FHA by the individual named Plaintiffs on behalf of themselves and all Black and/or Hispanic consumers (the "Class") who obtained a Countrywide home mortgage loan in the United States between January 1, 2001 and the date of judgment in this action (the "Class Period") and who were subject to Countrywide's Discretionary Pricing Policy pursuant to which they paid discretionary points, fees or interest mark-ups in connection with their loan.

16.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

17.     The phrase "Discretionary Pricing Policy" refers to Countrywide's policy of authorizing its loan officers, brokers and correspondent lenders to impose subjective, discretionary charges and interest mark-ups, that are included in the finance charge loans they originate.

18.     Plaintiffs do not know the exact size or identities of the proposed Class, since such information is in the exclusive control of the Defendant.  Plaintiffs believe that the Class encompasses many thousands or tens of thousands of individuals who are geographically dispersed throughout the United States. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

19.     All members of the Class have been subject to and affected by the same Discretionary Pricing Policy.  There are questions of law and fact that are common to the Class,

and predominate over any questions affecting only individual members of the Class.  These questions include, but are not limited to the following:

a.  The nature, scope and operations of Countrywide's Discretionary Pricing Policy;

b.  Whether Countrywide Bank, Countrywide Mortgage Ventures, LLC, and Countrywide Home Loans, are creditors under the ECOA because, for example, in the ordinary course of its business they participate in the decision of whether or not to extend credit to consumers;

c.  Whether Countrywide's Discretionary Pricing Policy is a facially neutral credit  pricing system that has effected racial discrimination in violation of ECOA;

d.  Whether there are statistically significant disparities between the amount of the discretionary charges imposed on Black and/or Hispanic persons and the amount of the discretionary charges imposed on white persons that are unrelated to creditworthiness;

e.  Whether any legitimate business reason for the Discretionary Pricing Policy can be achieved by a credit pricing system less discriminatory in its impact;

f.  Whether the Court can enter declaratory and injunctive relief; and

g.  The proper measure of disgorgement or damages.

20.  The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the

Plaintiffs and the other members of the Class were subject to the same Discretionary Pricing Policy that has disproportionately affected Black and/or Hispanic homeowners.

21.     The individual named Plaintiffs will fairly and adequately represent the interests of the Class.  They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions– in particular, consumer protection and discrimination actions.

22.     A class action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

23.     In the alternative, Countrywide has acted or refused to act on grounds generally applicable to the case, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## ALLEGATIONS OF CLASS-WIDE DISCRIMINATION

24.     Countrywide is one of the largest mortgage-lending companies in the United States.  Countrywide publicly promotes its home financing expertise by means of nationwide advertising campaigns.   In its advertisements, Countrywide solicits persons to apply for financing with Countrywide either in one of its offices or through one of the mortgage brokers whom Countrywide has authorized to accept applications on its behalf.

25.     Countrywide makes home-mortgage loans directly to consumers through its various subsidiaries.

26.     Countrywide also makes home-mortgage loans that are arranged by its network of mortgage brokers.  Those loans are made in reliance on Countrywide's credit-granting policies and with the participation of Countrywide.

27.     Countrywide also obtains business through a network of correspondent lenders, which originates loans that Countrywide funds. Those loans are made in reliance on Countrywide's credit-granting policies and with the participation of Countrywide.

28.     Due to Countrywide's policies as to where to place its offices and how to market its products, Black and/or Hispanic borrowers are more likely than white borrowers to apply for credit from Countrywide through sub-prime authorized brokers or correspondent lenders.

29.     Based on the latest available Home Mortgage Disclosure Act ("HMDA") data, available from the Department of Housing and Urban Development, blacks who borrow from Countrywide are over three times more likely than whites to have received a high-APR loan to purchase a home and over two times more likely to have received a high-APR to refinance their home.

30.     Hispanics who borrow from Countrywide are more likely than whites to have received a high-APR loan to purchase a home and more likely to have received a high-APR to refinance their home.

31.     A high-APR loan is a loan whose APR is at least three percentage points higher than the interest rate on U.S. Treasury securities of the same maturity, at the time the loan was made.

32.     While credit differences may explain some part of the disparities in rate and terms, Countrywide's Discretionary Pricing Policy accounts for a significant portion of the disparity.

33.     Countrywide's Discretionary Pricing Policy is unrelated to a borrower's objective credit characteristics such as credit history, credit score, debt-to-income ratio and loan-to-value ratios and results in purely subjective charges that affect the rate otherwise available to borrowers.

34.     Countrywide provides authorized mortgage brokers and correspondent lenders with substantial information about its loan programs, rates and credit criteria, as well as its policies for compensating mortgage brokers and correspondent lenders who arrange business for it.

35.     Countrywide authorizes mortgage brokers who have signed a contract with it to accept applications on its behalf, quote financing rates and terms on it (within the limitations set by Countrywide), inform credit applicants of Countrywide's financing options and to originate finance transactions using Countrywide's forms, in accordance with its policies.

36.     Countrywide authorizes its correspondent lenders to make loans based on its credit-granting policies. Countrywide funds these loans before or shortly after they are consummated.

37.     In all of the home-mortgage-finance-transactions at issue, Countrywide advances the funds to make the loans and bears some or all of the risk of default. Countrywide provides its loan officers, brokers and correspondent lenders with credit applications, loan contracts and other required financing forms, as well as instructions on filling out such documents necessary to complete home mortgage transactions.

38.     After a customer provides credit information to one of Countrywide's loan officers, brokers, or correspondent lenders, Countrywide computes a financing rate through an objective credit analysis that, in general, discerns the creditworthiness of the customer.

9

39.     These credit analyses consider numerous risk-related variables of creditworthiness, including credit bureau histories, payment amounts, debt ratio, bankruptcies, automobile repossessions, charge-offs, prior foreclosures, payment histories, credit score, debt-to-income ratios, loan-to-value ratios and other risk-related attributes or variables.   On information and belief, Countrywide uses these variables to determine a "mortgage score" for each credit applicant.

40.     Based on these objective risk-related variables and the resulting mortgage score, Countrywide derives a risk-based financing rate at which it would provide a home mortgage, often called the "Par Rate."   Alternatively, experienced Countrywide loan officers, brokers and correspondent lenders can estimate the risk-related Par Rate by referring to the applicant's credit bureau determined credit score.

41.     Although Countrywide's initial analysis applies objective criteria to calculate this risk-related Par Rate, Countrywide then authorizes a subjective component in its credit pricing system — the Discretionary Pricing Policy — to impose additional non-risk charges. On information and belief, the applicable Par Rates and authorized discretionary charges are communicated by Countrywide to its Loan Officers, brokers and correspondent lenders via regularly published "rate sheets."   Such rate sheets are published by Countrywide via intranet and internet.

42.     The discretionary charges are paid by the customer as a component of the total finance charge (the "Contract APR"), without the homeowner knowing that a portion of their Contract APR was a non-risk-related charge.

43.     Loan officers, brokers and correspondent lenders have discretion, within the limits set by Countrywide, to impose discretionary mark-ups as additional points in interest –

"a rate mark-up". When there is a rate mark-up, Countrywide shares the additional income, even if the loan is originated by a broker or correspondent lender.

44.     Countrywide's Discretionary Pricing Policy, by design, causes persons with identical or similar credit scores to pay different amounts for the cost of credit. As a result of using a subjective pricing component that is designed to charge persons with the same credit profiles different amounts of finance charge, the objective qualities of the initial credit analysis used to calculate the Par Rate are undermined and the potential for race bias becomes inherent in the transaction.

45.     The Discretionary Pricing Policy, although facially neutral (insofar as Countrywide uses the same or effectively the same policy for all credit applicants), has a disproportionately adverse effect on Blacks and/or Hispanics compared to similarly situated Whites in that Blacks and/or Hispanics pay disparately more discretionary charges (both in frequency and amount) than similarly situated whites. Statistical analysis of discretionary charges imposed on Black and/or Hispanic and White customers of other mortgage companies that use credit pricing systems structured like that of Countrywide has revealed that Blacks and/or Hispanics, after controlling for credit risk, are substantially more likely than similarly situated Whites to pay such charges.

46.     Loan officers, brokers and correspondent lenders are agents of Countrywide for the purpose of setting credit price, which is always set based on Countrywide's policy.

47.     The disparate impact suffered by Blacks and/or Hispanics is a direct result of Countrywide's Discretionary Pricing Policy in that Countrywide designed, disseminated, controlled, implemented and profited from the Discretionary Pricing Policy creating the disparate impact.

11

48.     Countrywide has a non-delegable duty to ensure that its mortgage financing structure and policies do not have a disparate impact on legally protected classes, such as Blacks and/or Hispanics.  Despite having such a non-delegable duty, Countrywide has chosen to use, and on information and belief, continues to use, a commission-driven, subjective pricing policy that it knows or should have known has a significant and pervasive adverse impact on Black and/or Hispanic homeowners.

49.     The disparities between the terms of Countrywide's transactions involving Black and/or Hispanic homeowners and the terms involving White homeowners cannot be a product of chance and cannot be explained by factors unrelated to race, but, instead, are the direct causal result of the use of the discriminatory Discretionary Pricing Policy.

50.     There are no legitimate business reasons justifying Countrywide's discriminatory Discretionary Pricing Policy that could not be achieved by a policy that has no discriminatory impact or a greatly reduced discriminatory impact.

### ALLEGATIONS OF NON-DISCLOSURE –
### FRAUDULENT CONCEALMENT (TOLLING)

51.     Commission-driven, discretionary pricing systems – such as those in the real estate mortgage industry that are structurally similar to the system utilized by Countrywide – have been found to produce significant discriminatory effects.  Knowledge concerning the significant and pervasive discriminatory impact of such commission-driven, discretionary credit pricing systems has been widely circulated throughout the financing industry for several years, particularly since 1994, as a result of numerous high profile actions by the United States Department of Justice and federal regulatory agencies.  Countrywide, as one of the largest mortgage companies in the United States, has known or should have known that its credit

pricing system causes Blacks and/or Hispanics to pay the Defendant more for mortgage financing than the amounts paid by White customers with identical or effectively identical credit scores.  The following various regulatory settlements involved discriminatory pricing policies structurally similar to Countrywide's pricing policy and were widely reported through the financing industry: *United States v. Blackpipe State Bank*, Civ. Act. No. 93-5115 (D. S.D. filed November 16, 1993)(charging American Indians higher interest rates) *United States v. First National Bank of Vicksburg*, No. 5:94 CV 6(B)(N) (S.D. Miss. filed Jan. 21, 1994) (charging African-Americans higher interest rates) *United States v. Huntington Mortgage Co.,* No. 1; 95 CV 2211 (N.D. Ohio filed October 18, 1995)(charging African-Americans higher fees) *United States v. Security State Bank of Pecos*, No. SA 95 CA 0996 (W.D.Tex. filed October 15, 1995)(charging Hispanics higher interest rates) *United States v. First National Bank of Gordon*, No. CIV-96-5035 (W.D.S.D. filed April 15, 1996)(charging American Indians higher interest rates) *United States v. Fleet Mortgage Corp*., No. 96-2279 (E.D.N.Y. filed May 7, 1996)(charging African-Americans and Hispanics higher interest rates) *United States v. Long Beach Mortgage Co.*, No. CV-96-6159 (C.D. Cal. Filed Sept. 5, 1996)(charging African-Americans, Latinos, women and persons over age 55 higher interest rates).

52. Despite the fact that Countrywide has known or should have known of the discriminatory effect of its credit pricing policy, none of the loan documents inform the customer that its finance rates are subjective and not based solely on risk-related characteristics.

53. Although, pursuant to Countrywide's Discretionary Pricing Policy, the final credit rate that a customer pays for credit is subjective, Countrywide's advertisements, marketing materials and financing documents universally create and foster the image that

Countrywide offers non-negotiable, competitive finance rates that are objectively set by Countrywide based on credit-risk factors.

54.     Despite spending millions of dollars annually on advertising, marketing materials, and the creation and distribution of Countrywide financing documents that falsely create and foster the image that Countrywide offers competitive rates that are objectively set, the Defendant never discloses the truth to its credit applicants concerning the fact that: (a) its credit rates are subjective and can vary significantly among persons with identical credit profiles, and (b) that it has authorized and provided a financial incentive to its loan officers, authorized brokers and correspondent lenders to subjectively increase the credit rate above the rate otherwise available to homeowners.

55.     Countrywide's Black and/or Hispanic customers, due to the inherent nature of the Countrywide's undisclosed pricing system and due to Countrywide's deception and concealment, have no way of knowing or suspecting (a) the existence of Countrywide's subjective credit pricing policy; (b) that they were charged additional subjective credit charges; and (c) that they were charged a disproportionately greater amount for their cost of credit than similarly situated White persons.

### FACTUAL ALLEGATIONS

#### *Facts Relating To Plaintiff Anton Griffin*

56.     Anton Griffin resides at 3503 Indian Head Lane, Joliet, Illinois, 60435, with his wife and their young children.

57.     On April 28, 2006, Mr. Griffin entered into a mortgage transaction with Countrywide Bank as the lender.

14

58.     The loan (Loan No. XXXX3742) was a 30-year, adjustable rate loan with a loan amount of $260,299.00.  The loan included a "start rate" of 3.5%, with the first rate change occurring one month later, on June 1st 2006.  Interest rate change dates were scheduled to occur on the first day of each month subsequent to the initial June 1st 2006 interest rate change date.  According to the note, each month's new interest rate would be calculated by adding 3.575% ("Margin") to the Current Index.

59.     According to the HUD-One Settlement Statement, Mr. Griffin paid $7,249.61 in settlement charges in connection with the loan, including, a $600.00 underwriting fee to Countrywide.

60.     True and correct copies of the Mortgage Note (including all Riders) and HUD-One Settlement Statement provided in connection with Loan No. XXXX3742 are attached hereto and labeled Exhibit 1 and Exhibit 2, respectively.

61.      On information and belief, unbeknownst to Mr. Griffin, the subprime loan, including, but not limited to the "Margin" of 3.575% on the mortgage loan was derived at by a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to the Countrywide's Discretionary Pricing Policy.  The interest rate Mr. Griffin pays changes monthly pursuant to the note, and the interest rate is recalculated every month based upon adding the Current Index with the discriminatorily derived Margin of 3.575%.

62.     On information and belief, Mr. Griffin was subject to Countrywide's Discretionary Pricing Policy.

63.     On information and belief, Mr. Griffin was charged a disproportionately greater amount in non-risk-related credit charges than similarly situated White persons.

15

***Facts Relating to Plaintiff Guadalupe Marchan***

64.     Guadalupe Marchan resides at 1344 S. 14th Street, Saint Charles, Illinois, 60174.

65.     Ms. Marchan purchased her Saint Charles home on August 31, 2006, with financing from Countrywide Mortgage Ventures, LLC.

66.     On August 31, 2006, Ms. Marchan entered into a mortgage transaction with Countrywide Mortgage Ventures, LLC.  The transaction was divided into two loans.

67.     The larger loan (Loan No. XXXX7365) was a 2 year fixed, 28-year ARM LIBOR loan with a disclosed APR of 9.816%.  The loan amount was $115,694.86.  According to the note, the interest rate may change on September 1, 2008, and on that day every six months thereafter.  According to the note, interest rate changes are calculated by adding 4.00% (the "Margin") to the Current Index.  The note further provides that the interest rate will never exceed 16.5% nor be less than 9.5%.

68.     The smaller loan (Loan No. XXXX7373), which had a loan amount of $29,720.00 is a 15-year fixed rate loan with a yearly interest rate of 12.250%.

69.      True and correct copies of the Truth-in-Lending disclosure and Adjustable Rate Note provided in connection with Loan No. XXXX7365 are attached hereto and labeled Exhibit 3 and Exhibit 4, respectively.

70.     True and correct copies of the HUD-One Settlement Statement and Note provided in connection with Loan No. XXXX7373 are attached hereto and labeled Exhibit 5 and Exhibit 6, respectively.

71.     At the time of the transaction, Ms. Marchan had a credit score that would have qualified with many lenders for a mortgage in the prime-market. Instead, Ms. Austin received mortgages at sub-prime rates and on sub-prime terms.

72.     On information and belief, unbeknownst to Ms. Marchan, the subprime loans, including, but not limited to, the contract APR on the mortgage loans was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to the Countrywide's Discretionary Pricing Policy.  On information and belief, unbeknownst to Ms. Marchan, the subprime loans, including, but not limited to, the "Margin" of 4% on the adjustable rate mortgage loan was derived at by a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to the Countrywide's Discretionary Pricing Policy.  The interest rate Ms. Marchan pays changes every six months after the initial two years, pursuant to the note, and the interest rate is recalculated every six months based upon adding the Current Index with the discriminatorily derived Margin of 4.00%.

73.     On information and belief, Ms. Marchan was subject to Countrywide's Discretionary Pricing Policy.

74.     On information and belief, Ms. Marchan was charged a disproportionately greater amount in non-risk-related credit charges than similarly situated White persons.

### *Facts Relating to Plaintiff Rosendo Quinones*

75.     Rosendo Quinones resides at 571 Wingpointe Drive, Aurora, Illinois 60506.

76.     On March 24, 2005, Mr. Quinones entered into a mortgage transaction with Countrywide Home Loans, Inc.

77.     The mortgage transaction (Loan No. XXXX4836) was a 3 year fixed, 27 year ARM LIBOR loan with a disclosed APR of 10.087%.  The loan amount was $240,546.14.

17

78.     True and correct copies of Truth-in-Lending disclosure and HUD-One Settlement Statement provided in connection with the loan are attached hereto and labeled Exhibit 7 and Exhibit 8, respectively.

79.     On information and belief, unbeknownst to Mr. Quinones, the subprime loan, including, but not limited to, the contract APR on the mortgage loan was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to Countrywide's Discretionary Pricing Policy.

80.      On information and belief, Mr. Quinones was subject to Countrywide's Discretionary Pricing Policy.

81.     On information and belief, Mr. Quinones was charged a disproportionately greater amount in non-risk-related credit charges than similarly situated White persons.

## COUNT I

### (DISCRIMINATION IN VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT AGAINST ALL DEFENDANTS BY PLAINTIFFS ON BEHALF OF THE CLASS)

82.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

83.      Countrywide is a creditor as defined in ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

84.     Countrywide designed, disseminated, controlled, implemented and profited from the discriminatory policy and practice alleged herein — the Discretionary Pricing Policy — which has had a disparate economic impact on Blacks and/or Hispanics compared to similarly situated Whites.

18

85.     All actions taken by the Countrywide loan officers and Countrywide's brokers and correspondent lenders were in accordance with the specific authority granted to them by Countrywide and were in furtherance of Countrywide's policies and practices.

86.     As a result of Countrywide's Discretionary Pricing Policy, Countrywide has collected more in finance charges from Blacks and/or Hispanics than from similarly situated White persons, for reasons totally unrelated to credit risk.

87.     Countrywide's Discretionary Pricing Policy violates the Equal Credit Opportunity Act.

88.     Plaintiff and prospective class members are aggrieved persons as defined in ECOA by virtue of having been subject to the discriminatory, Discretionary Pricing Policy.

**COUNT II**

**(DISCRIMINATION IN VIOLATION OF THE FAIR HOUSING ACT
AGAINST ALL DEFENDANTS ON BEHALF OF THE CLASS)**

89.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

90.     Countrywide engaged in residential real estate-related transactions with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

91.     Countrywide's Discretionary Pricing Policy has resulted in discrimination with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective members of the Class.

92.      As a result of Countrywide's Discretionary Pricing Policy, Countrywide has collected more in finance charges from Blacks and/or Hispanics than from similarly situated white persons, for reasons totally unrelated to credit risk.

93.     Countrywide's Discretionary Pricing Policy violates the Fair Housing Act and constitutes actionable discrimination on the basis of race.

94.     Plaintiff and the Class are aggrieved persons as defined in FHA by virtue of having been subject to the discriminatory, Countrywide's Discretionary Pricing Policy.

## COUNT III

### (DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. §§ 1981, 1982, 1985 AGAINST ALL DEFENDANTS ON BEHALF OF THE CLASS)

95.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

96.     Countrywide Bank, Countrywide Mortgage Ventures and Countrywide Home Loans, Inc., have by their actions described above, designed, disseminated, controlled, implemented and profited from a subjective, racially biased Discretionary Pricing Policy which created a disparate impact on Blacks and/or Hispanics.  Such actions were taken deliberately and with racially discriminatory intent, and with reckless disregard for Plaintiffs' and Class members' rights.

97.     This racially discriminatory pattern of acts and conduct denied Plaintiffs and the Class the same rights to make and enforce contracts, and to enjoy the full and equal benefit of the laws, as are enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

98.     Furthermore, such acts and conduct denied Plaintiffs and the Class the same rights to inherit, purchase, lease, sell, hold and convey real property, as are enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1982.

99.     Finally, such pattern of actions by the Countrywide Defendants constituted a conspiracy for the purpose of depriving Plaintiffs and the Class of the equal protection of the

laws, or of equal privileges and immunities of the laws of the United States, in violation of 42 U.S.C. § 1985(3).

100.   As a proximate result of these racially discriminatory actions, Plaintiffs and the Class have suffered economic loss, mental anguish, deprivation of civil rights, and the prospective loss of their homes.

101.   Defendants' actions were intentional, wanton, malicious and in violation of the public interest and entitle Plaintiffs and the Class to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request the following relief:

*On behalf of the Class:*

a.   Certify this case as a class action and certify the named Plaintiffs herein to be adequate class representative and their counsel to be class counsel;

b.   Enter a judgment, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. § 3613, declaring the acts and practices of Defendants complained of herein to be in violation of ECOA and the FHA;

c.   Grant a permanent or final injunction, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. § 3613(c), enjoining the Defendants, and the Defendants' agents and employees, affiliates and subsidiaries, from continuing to discriminate against plaintiffs and the members of the Class because of their race through further use of the Discretionary Pricing Policy or any non-risk related Discretionary pricing policy employed by the Defendants;

d.      Order the Defendants, pursuant to 15 U.S.C. § 1691e(c) and/or 42 U.S.C. § 3613(c), to adopt and enforce a policy that requires appropriate training of the Defendants' employees and its brokers and correspondent lenders to prevent discrimination;

e.      Order Countrywide, pursuant to 15 U.S.C. § 1691e(c) and/or 42 U.S.C. § 3613(c), to monitor and/or audit the racial pattern of its financings to ensure the cessation of discriminatory effects in its home mortgage transactions;

f.      Order disgorgement, pursuant to 15 U.S.C. § 1691e (c), of all disproportionate non-risk charges imposed on Blacks and/or Hispanics by the Defendants' Discretionary Pricing Policy; and order the equitable distribution of such charges, as restitutionary relief, to all appropriate class members;

g.      Order actual and punitive damages to the Plaintiff and the class pursuant to 42 U.S.C. § 3613(c);

h.      Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c);

i.      Damages sufficient to compensate Plaintiff and the Rule 23 Class for their injuries;

j.      Back Pay, inclusive of lost wages and any benefits;

k.      Pre-judgment and post-judgment interest;

l.      Punitive damages;

22

     m.     A declaratory judgment that the employment practices challenged herein are illegal and violative of the rights secured to Plaintiff and the Class; and

     n.     Any and all other relief that this Honorable Court may deem just and equitable.

*On behalf of Mr. Griffin:*

     o.     Order actual and punitive damages to the Plaintiff pursuant to 42 U.S.C. § 3613(c);

     p.     Award Mr. Griffin the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c); and

     q.     Grant Mr. Griffin such other and further relief as this Court finds necessary and proper.

*On behalf of Ms. Marchan:*

     r.     Order actual and punitive damages to Ms. Marchan pursuant to 42 U.S.C. § 3613(c);

     s.     Award Ms. Marchan the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c); and

     t.     Grant Ms. Marchan such other and further relief as this Court finds necessary and proper.

*On behalf of Mr. Quinones:*

     u.     Order actual and punitive damages to Mr. Quinones pursuant to 42 U.S.C. § 3613(c);

    v.         Award Mr. Quinones the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c); and

    w.        Grant Mr. Quinones such other and further relief as this Court finds necessary and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all issues so triable.

DATE: September 9, 2008          Respectfully submitted,

                        On Behalf of the Plaintiffs,

                        /s/ D. Eric Lycan
                        D. Eric Lycan
                        Gillard B. Johnson, III
                        Bowling & Johnson PLLC
                        1010 Monarch Street, Suite 250
                        P.O. Box 910810
                        Lexington, Kentucky 40591-0810
                        Telephone: (859) 255-7080
                        Facsimile: (859) 255-6903
                        Email: elycan@insightbb.com
                        Email: gjohnson@cbandj.com

                        Of Counsel
                        (Subject to Pro Hac Vice Motion and Order):

                        Robert M. Foote, Esq. (#03124325)
                        Matthew J. Herman, Esq. (#06237297)
                        FOOTE, MEYERS, MIELKE & FLOWERS, LLC
                        28 N. First St.
                        Suite 2
                        Geneva, Illinois 60134
                        Telephone: (630) 232-6333
                        Facsimile:  (630) 845-8982
                        Email: rmf@foote-meyers.com
                        Email: mherman@foote-meyers.com

24

Kathleen C. Chavez (#6255735)
CHAVEZ LAW FIRM, P.C.
28 N. First St.
Suite 2
Geneva, Illinois 60134
Telephone: (630) 232-4480
Facsimile:  (630) 845-8982
Email: Gkeg4@aol.com
Peter L. Currie, Esq. (#06281711)
THE LAW FIRM OF PETER L. CURRIE, P.C.
536 Wing Lane
Saint Charles, Illinois 60174
Telephone: (630) 862-1130
Facsimile:  (630) 845-8982
Email: Plclaw05@aol.com